Affirmed and Memorandum Opinion
filed January 28, 2010.

 

In
The

Fourteenth
Court of Appeals



NO. 14-08-00862-CR



Wade Steadman
Stafford, Appellant 

v.

The State of
Texas, Appellee 



On Appeal from
the 185th District Court

Harris County, Texas

Trial Court
Cause No. 1128682



 

MEMORANDUM OPINION 

A jury convicted appellant Wade Steadman Stafford of
aggravated robbery.  Appellant elected for the trial judge to assess
punishment.  The trial court assessed punishment at confinement for life.  In
nine issues, appellant challenges the legal and factual sufficiency of the
evidence to support his conviction, asserts that the trial court erroneously
admitted hearsay testimony, and contends he was identified through a tainted
identification procedure.  We affirm.

Background

On February 25, 2007, Sarah Butard, a clerk at a
smoking accessories shop called Smoke Toys located in Houston, was robbed at
knifepoint.  Numerous items from the shop were stolen, as well as Butard’s
wallet and cell phone.  Butard identified appellant as the perpetrator of the
robbery.  Appellant had previously been to the store on three occasions and had
purchased a lighter on his second visit.  He had returned to the store a third
time to replace the lighter, which he told Butard was not working properly.  Butard
explained that appellant returned to the store on the day of the robbery and
waited until several other customers left.  When she went to assist him, he
asked to see a specific lighter.  She opened the display case and took out the
lighter; he looked at it and said he did not want it.  Butard started to put
the lighter back into the case, and appellant came around the counter, grabbed
her by the shoulder, and squeezed very hard.  Appellant then threatened Butard
with a knife, warning her, “Do not scream or I will slit your throat.”

Appellant pulled Butard into the back room of the
shop; he again threatened to “cut” her when she explained that because of a
back injury she could not lie on her stomach.  Appellant forced her to lie on
her stomach, cuffed her hands behind her back using “zip ties,” and gagged her
with a scarf.  He then briefly returned to the front of the store, but came
back into the back room and asked Butard how to open the cash register.  He
also tried to take Butard’s wedding ring off her finger, but was unable to
remove it.  Butard heard appellant return to the front of the shop, open the
cash register, and open the locked display cases where the more expensive
lighters were stored.  She then heard appellant leave the building, but he came
back about five minutes later yelling that he could not find his cell phone. 
Butard heard him leave the store, but he told her he would be back.  

Lance Losey, an employee with an insurance agency
located next door to Smoke Toys, reported seeing appellant running back and
forth in front of the strip mall in which the companies were located around the
same time that the robbery was taking place.  Losey stated that appellant
“jerked” on the door to his office, which was locked.  Losey completed his work
and left his office, but decided to check on Butard before he went home.

Meanwhile, in the Smoke Toys shop, Butard lay in the
back room for about ten minutes, and then she started attempting to scoot into the
front of the store.  She heard the door chime and thought it was appellant
returning, but it was Losey.  She yelled for help and told Losey, “I’ve been
robbed. . .  Call the cops, call the police.”  Losey cut the ties off Butard’s
wrists and called the police.  Houston Police Department Officer Madrid arrived
at the scene and took down details of the robbery from Butard and Losey. 
Although Officer Madrid did not mention or describe the knife in the narrative
portion of his offense report, he noted at the beginning of the report that the
offense was “aggravated robbery, elderly, over 65, by a cutting instrument.” 
Further, Officer Madrid noted that Butard stated she had “dealings” with the
perpetrator prior to the robbery.  

An officer from the Crime Scene Unit, Officer Nunez, arrived
at the scene and took several photographs.  Officer Nunez also collected
several pieces of evidence, including zip ties, a scarf, several empty lighter
boxes, and a cellular telephone.  Nunez did not recover a knife from the crime
scene.  After the initial on-scene investigation, Sergeant Green was assigned
to continue investigating the incident.  Sergeant Green explained that no
identifiable prints were discovered either at the robbery scene or on the cell
phone recovered from the scene.  During the investigation, Sergeant Green called
a number found on the cell phone; the individual who answered the number
identified herself as “Marge Stafford.”  Green then created a photo array including
appellant’s photograph because he had determined that appellant was a possible
suspect.  In early May 2007, Green showed the photo array to Butard, and she
immediately identified appellant as the robber.  A supplemental police offense
report was also completed sometime after the robbery, which contains Butard’s
description of the knife.

At appellant’s trial, Butard and Losey testified
regarding the details of the robbery described above.  During Butard’s
testimony, appellant’s counsel objected to the reliability of Butard’s
identification of appellant.  The trial court overruled his objection, but granted
a running objection regarding the reliability of Butard’s in- and out-of-court
identifications of appellant.  Butard testified that she had recognized
appellant from her previous interactions with him and stated that she
identified him in the photo array prepared by Sergeant Green.  She stated that
none of the other individuals in the photo array had ever come into the Smoke
Toys shop.  Butard identified appellant as the person who had robbed her using
a knife and stated that her in-court identification was based only on the
events that occurred the day of the robbery.  She also stated that she was
“positive” that appellant had a knife in his right hand when he initially
grabbed and threatened her.  Finally, a video of an individual outside the
strip mall who attempted to open a door to one of the shops was admitted into
evidence, and Butard stated that appellant is the person depicted in the video.

Appellant’s counsel also objected to Losey’s in-court
identification of appellant, based on the fact that Losey admitted that,
moments before testifying, he had seen a copy of the photo array in which
appellant’s picture was identified.  The trial court overruled his objection,
but again granted a running objection to Losey’s identification of appellant.  Losey
testified that he only saw the photo array for a very brief amount of time and
that he did not notice that Butard had selected appellant’s photograph.  He
further stated that his in-court identification of appellant resulted only from
his recollection from the day of the robbery and was not based on the brief
glimpse he had of the photo array before he testified.  Losey also identified
appellant as the person in the video seen attempting to open one of the shop
doors.

Officers Madrid and Nunez both testified regarding
their involvement with the investigation described above.  Sergeant Green also
testified and described his investigation.  During Sergeant Green’s testimony,
appellant’s trial counsel requested a hearing outside the presence of the jury
regarding his hearsay and confrontation clause objections to Sergeant Green’s
testimony about the cell phone and how Green identified appellant as a
suspect.  During this hearing, Sergeant Green testified that he called a number
labeled “parents” he found on the cell phone.  A female, who identified herself
as “Marge Stafford,” answered the call.  According to Green, Marge Stafford identified
herself as appellant’s mother and stated that the cell phone the officers
discovered at the crime scene belonged to appellant.  At the close of the
hearing, the trial court overruled appellant’s objections, but granted a
running objection on hearsay grounds to Sergeant Green’s testimony regarding
his conversation with Marge Stafford.  Sergeant Green testified before the jury
only that (a) he called a phone number he discovered on the cellular telephone,
(b) the person who answered the phone identified herself as “Marge Stafford,”
and (c) he created a photo array including appellant’s photograph because he
had determined appellant was a potential suspect.  Sergeant Green further
testified that Butard described the knife used during the offense and that this
description was included in a supplemental offense report.  Finally, Green
reported that no DNA, fingerprint, or fiber evidence linking appellant to the crime
scene was discovered at the Smoke Toys shop.

After hearing the evidence, the jury found appellant
guilty of aggravated robbery as charged in the indictment.  Finding two
enhancement paragraphs true, the trial court sentenced appellant to life in the
Texas Department of Criminal Justice, Institutional Division.  This appeal
timely ensued after a motion for new trial was overruled by operation of law.  

Analysis

A.        Sufficiency
of the Evidence

In his first four issues, appellant challenges the
legal and factual sufficiency of the evidence to show that (a) he unlawfully or
knowingly committed the offense of robbery of the complainant and (b) he used
or exhibited a knife in the commission of the robbery of the complainant.  As
is relevant here, a person commits aggravated robbery if, in the course of
committing theft[1]
and with the intent to obtain or maintain control of property, he intentionally
or knowingly threatens or places another in fear of imminent bodily injury or
death by using or exhibiting a deadly weapon.  See Tex. Penal Code Ann. §§ 29.02, 29.03 (Vernon
2003).

1.     
Standard of Review

In a legal sufficiency challenge, we employ the
familiar standard of viewing the evidence in the light most favorable to the
verdict.  King v. State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000).  If
any rational trier of fact could have found the essential elements of the
offense beyond a reasonable doubt, we will affirm.  Id.

We also employ the familiar standard of review to
analyze a factual sufficiency challenge:  we review all the evidence in a
neutral light, favoring neither party to determine (1) whether the evidence
supporting the conviction, although legally sufficient, is nevertheless so weak
that the jury’s verdict seems clearly wrong and manifestly unjust, or (2)
whether, considering conflicting evidence, the jury’s verdict is against the great
weight and preponderance of the evidence.  Watson v. State, 204 S.W.3d
404, 414B15, 417 (Tex.
Crim. App. 2006).  We cannot conclude that a conviction is “clearly wrong” or “manifestly
unjust” simply because, on the quantum of evidence admitted, we would have
voted to acquit had we been on the jury, nor can we declare that a conflict in
the evidence justifies a new trial because we disagree with the jury’s
resolution of that conflict.  Id. at 417.  We must give due deference to
the jury’s determinations, particularly those concerning the weight of the
evidence and the credibility of the witnesses.  See Johnson v. State,
23 S.W.3d 1, 8–9 (Tex. Crim. App. 2000).

2.     
Application

Appellant does not dispute that Butard was robbed
with a knife; rather, his legal and factual sufficiency challenges focus on his
contention that there is insufficient evidence to prove beyond a reasonable
doubt that he was the individual who committed the robbery using a knife.  He
asserts that, “at best, the evidence supports the undisputed fact that
[a]ppellant had on several occasions frequented Smoke Toys, the shop wherein
the robbery of [the] complainant[] had occurred.”  However, as discussed above,
Butard identified appellant as her assailant, and Losey identified appellant as
the individual he had seen on the day of the robbery.  Although appellant
complains that the “robber in the videotape appeared to be wearing sunglasses”
and neither Butard nor Losey mentioned any sunglasses in their descriptions to
the police, it is unclear from the videotape whether the individual in it is actually
wearing sunglasses.  Further, appellant emphasizes that no forensic evidence,
such as fingerprints, DNA, or fibers, linking appellant to the offense were
present, but cites no authority that such evidence is necessary.  

In short, Butard, who was familiar with appellant due
to several previous interactions with him, positively identified appellant as
the individual who robbed her.  She detailed the events surrounding the
robbery, including the fact that appellant returned to the shop frantically
searching for his cell phone.  Losey identified appellant as the individual who
had attempted to gain access to his office around the time that Butard stated
appellant ran back into the shop looking for his cell phone.  The evaluation of
Butard and Losey’s credibility and the reliability of their identification of
appellant were matters to be decided by the jury.  See id. at 7. 
Whether viewed neutrally or in the light most favorable to the jury’s verdict,
the evidence is clearly sufficient to support the jury’s determination that
appellant was the individual who committed the aggravated robbery in this
case.  We therefore overrule appellant’s first four issues.

B.        “Hearsay”
Evidence

            In his fifth,
sixth, and seventh issues, appellant asserts that the trial court erroneously
(a) admitted hearsay testimony regarding the identity of a speaker who answered
a phone call to a telephone number recovered from the cellular phone recovered
at the scene, which (b) violated his Confrontation Clause rights, and (c)
resulted in the production of an inadmissible photo array.  

1.     
Standard of Review and Applicable Law

We review a trial court’s evidentiary rulings under
an abuse of discretion standard. Montgomery v. State, 810 S.W.2d 372,
379 (Tex. Crim. App. 1990) (en banc).  We recognize that a trial court must be
given wide latitude to admit or exclude evidence. Theus v. State, 845
S.W.2d 874, 881 (Tex. Crim. App. 1992); Grant v. State, 247 S.W.3d 360,
366 (Tex. App.—Austin 2008, pet. ref’d).  Thus, we will not disturb the trial
court’s ruling if it is “within the zone of reasonable disagreement.”  Winegarner
v. State, 235 S.W.3d 787, 790 (Tex. Crim. App. 2007).

The Texas Rules of Evidence prohibit the admission of
hearsay evidence except as provided by statute or other rules.  See Tex. R. Evid. 802.  Hearsay is a
statement,[2]
other than one made by the declarant testifying at trial, offered for the truth
of the matter asserted therein.  See Tex.
R. Evid. 801(d).  Statements that are not offered to prove the truth of
the matter asserted, but for some other purpose, are not hearsay.  Guidry v.
State, 9 S.W.3d 133, 152 (Tex. Crim. App. 1999); Davis v. State, 169
S.W.3d 673, 675 (Tex. App.—Fort Worth 2005, no pet.) (citing Dinkins v.
State, 894 S.W.2d 330, 347–48 (Tex. Crim. App. 1995) (en banc)).  

Generally, the Confrontation Clause[3] bars the
admission of out-of-court “testimonial” statements unless the declarant is
unavailable to testify and the defendant had a previous opportunity to cross-examine
the declarant.  Campos v. State, 256 S.W.3d 757, 761 (Tex. App.—Houston
[14th Dist.] 2008, pet. ref’d).  Generally, a statement is considered
“testimonial” if it was a solemn declaration made for the purpose of
establishing some fact.  Dixon v. State, 244 S.W.3d 472, 481 (Tex.
App.—Houston [14th Dist.] 2007, pet. ref’d) (citing Crawford v. Washington,
541 U.S. 36, 51 (2004)).  Although “testimonial” has not been explicitly
defined by the United States Supreme Court, the “core class[es] of ‘testimonial
statements’” include:  (1) ex parte in-court testimony; (2) affidavits; (3)
depositions; (4) confessions; (5) custodial examinations; and (6) statements
made under circumstances that would lead an objective witness to reasonably
believe that the statement could be used at a later trial.  See Crawford,
541 U.S. at 51–52.  

2.     
Application

Much of the information appellant complains about was
adduced during his trial counsel’s voir dire of Sergeant Green outside
the jury’s presence.  The jury was informed only that (a) Sergeant Green called
a telephone number he found on the cell phone, (b) the person who answered the
call identified herself as “Marge Stafford,” and (c) Sergeant Green created a
photo spread including a photograph of appellant because Green had developed
appellant as a suspect.  

Sergeant Green’s testimony was not offered to prove
the truth of what was said—that the person who answered the telephone was Marge
Stafford—but to explain how appellant became a suspect.  Cf. Guidry, 9
S.W.3d at 152 (noting that address book entry was admissible because it was not
offered for the truth of the entry, but to establish a link between
conspirators); Dinkins, 894 S.w.2d at 347 (concluding victim’s
appointment book containing entry indicating defendant had appointment with
victim during time of murder was not hearsay because it was offered to explain
how the defendant became a suspect); see also Davis, 169 S.W.3d at
676–76 (“Thus, a police officer may testify about anonymous tips received for
the purpose of showing why the investigation focused on a particular
defendant.”).  Accordingly, Sergeant Green’s testimony about the identity of
Marge Stafford was not hearsay because it was not offered for the truth of the
matter asserted therein.  We therefore overrule appellant’s hearsay challenge
to this evidence.

Further, we cannot discern anything “testimonial”
about Stafford’s response regarding her own identity to Sergeant Green because
her identity was not an issue at appellant’s trial.  Cf. Kimball v. State,
24 S.W.3d 555, 565 (Tex. App.—Waco 2000, no pet.) (concluding that because
statement was offered to show reason for officer’s actions rather than for its
truth, it was not hearsay and did not violate appellant’s constitutional right
to confrontation).  Thus, we overrule appellant’s Confrontation Clause
challenge to this evidence.

Finally, because we conclude that Stafford’s
statement was neither hearsay nor testimonial, the fact that it may have been
employed in the creation of the photo array is immaterial.  Moreover, appellant
has not identified any legal authority to support his claim that a photo array
itself is inadmissible because police officers identified a suspect through
out-of-court conversations.[4]
 We further note that appellant did not object to the photo array on this basis,
but instead complained that the identification procedure was tainted and that Losey
saw the photo array on the day of trial.  Thus he has not preserved this issue
for our review.  See Guevara v. State, 97 S.W.3d 579, 583 (Tex.
Crim. App. 2003) (concluding that appellant failed to preserve error on
appellate complaint because it did not comport with objection at trial).  We
therefore overrule appellant’s challenge to the photo array. 

In sum, we overrule appellant’s fifth, sixth, and
seventh issues relating to his “hearsay” complaints.

C.        “Tainted”
Identification Procedure

            In issues eight
and nine, appellant asserts that Butard’s identification of appellant in a
photo array was the product of a tainted identification procedure and that Losey’s
identification of appellant was the product of police misconduct and a tainted
identification.  

1.     
 Standard of Review and Applicable Law

An in-court identification is inadmissible when, considering
the totality of the circumstances, the photographic identification procedure
was “‘so impermissibly suggestive’” that it gave rise to a “‘very substantial
likelihood of irreparable misidentification.’”  Luna v. State, 268
S.W.3d 594, 605 (Tex. Crim. App. 2008) (quoting Ibarra v. State, 11
S.W.3d 189, 195 (Tex. Crim. App. 1999)).  Ultimately, “[r]eliability is the
linchpin in determining the admissibility of identification testimony.”  Id. 
Finally, the appellant must prove, by clear and convincing evidence, that the
out-of-court identification procedure was impermissibly suggestive and that the
suggestive procedure gave rise to a very substantial likelihood of
misidentification.  Barley v. State, 906 S.W.2d 27, 32–33 (Tex. Crim.
App. 1995) (en banc).  

2.     
Application

Appellant argues that the pretrial identification
procedure was unduly suggestive because, according to Butard, she was asked by
Sergeant Green only if she “recognized” anyone.  He asserts that the
instructions given by Green “were impermissibly suggestive and tainted Butard’s
identification of [a]ppellant because she recognized him solely from prior
interactions as a client of the shop.”  However, both Butard and Sergeant Green
testified that Butard immediately pointed to appellant’s photograph and stated
that he was the person who robbed her.  Appellant provides no legal authority
for his contention that the complainant’s familiarity with him prior to the
robbery taints her pre-trial identification of him.  Indeed, if anything, the
fact that Butard was familiar with appellant prior to the robbery serves to
strengthen her identification of him.  

Further, appellant has failed to establish that
Sergeant Green used an impermissibly suggestive identification procedure; he
does not claim that the individuals in the photo array were markedly different
from appellant or caused appellant’s photograph to stand out in any way. 
Additionally, Butard testified that there was nothing unique or special about
the photograph of appellant compared to the other pictures.  She also testified
that no one suggested to her which photograph to select, and Sergeant Green
stated he admonished her that she was under no obligation to pick anyone and
that one of the people in the photo array was possibly, but not necessarily,
involved in the case.  Cf. id. (stating that suggestiveness may be
created by the manner in which the pretrial identification is conducted, such
as by police pointing out the suspect or suggesting that the suspect is
included in the photo array).

The record reflects that Butard identified
appellant’s photograph because she recognized him as the person who robbed her,
not simply because she recognized him as a former customer.  Consequently,
appellant has failed to establish by clear and convincing evidence that the
pre-trial identification procedure was impermissibly suggestive or that it gave
rise to a very substantial likelihood of misidentification, and we overrule his
eighth issue. 

Turning to appellant’s ninth issue, he asserts that
the trial court erred in overruling his objection and permitting Losey to
identify appellant at trial as the same person he had observed the day of the
robbery.  His complaint is based on the fact that Losey testified that he had
seen State’s Exhibit 30, the photo array showing appellant as the individual
identified by the complainant, shortly before testifying.  However, Losey
testified that he had viewed the exhibit for only a very brief moment—he
described it as “one second[.]”  He further testified that he did not notice
that Butard had identified appellant’s photograph in the photo array.  Finally,
he stated that his identification of appellant was based solely on his
recollections of the day of the robbery and that he was “a hundred percent
sure” that appellant was the person he saw pull on his office door that day,
even though he only saw appellant for a few seconds.  Considering the entirety
of Losey’s testimony, his in-court identification of appellant appears to be
reliable.  See Luna, 268 S.W.3d at 605.  We therefore overrule
appellant’s ninth issue.

Conclusion

We affirm the trial court’s judgment.

 








                                                                                    

                                                                        /s/        Margaret
Garner Mirabal

                                                                                    Senior
Justice

 

Panel
consists of Chief Justice Hedges, Justice Anderson, and Senior Justice Mirabal.*

 

Do
Not Publish — Tex. R. App. P.
47.2(b).









[1]
A person commits theft if he unlawfully appropriates property with the intent
to deprive the owner of it.  See Tex.
Penal Code Ann. § 31.03(a) (Vernon Supp. 2009).





[2]
Statements may be either oral or written, or nonverbal conduct that is intended
as a substitute for verbal expression.  Tex.
R. Evid. 801(a).





[3]
U.S. Const. amend. VI.





[4]
The cases appellant relies on do not support this contention.  See Schaffer
v. State, 777 S.W.2d 111, 114 (Tex. Crim. App. 1989) (explaining concept of
“backdoor” hearsay); Coots v. State, 826 S.W.2d 955 (Tex. App.—Houston
[1st Dist.] 1992, no pet.) (concluding that detailed conversation officer had
with two witnesses and subsequently relayed to jury violated hearsay rule even
though State claimed evidence was admissible to show how officer came to
include appellant’s picture in photo spread).





* Senior Justice Margaret Garner Mirabal
sitting by assignment.